# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# NORTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,                         Criminal No.: 16-cr-20499

v.                                          Honorable Thomas L. Ludington

SCOTT MCQUARRIE, et al,

        Defendants.

_____/

## ORDER DENYING MOTION FOR SEVERANCE, DENYING MOTION FOR A PRETRIAL HEARING ON THE ADMISSIBLITY OF COCONSPIRATOR STATEMENTS, AND GRANTING IN PART MOTIONS FOR BILL OF PARTICULARS

Scott McQuarrie was indicted on June 13, 2016, with six counts alleging that he made false statements and converted collateral pledged for a loan he received from the Farm Service Agency (FSA). ECF No. 1. On June 8, 2017, a superseding indictment was returned which charged Scott McQuarrie with twelve counts and which named his parents, David Allen McQuarrie and Yvonne Evelyn McQuarrie, as co-Defendants in two counts. Earlier this month, a second superseding indictment was issued which charged the three Defendants with an additional two counts, for a total of fourteen counts. ECF No. 42. On January 10, 2018, less than a month before the jury trial is scheduled to begin, a *third* superseding indictment was issued. ECF No. 76. The third superseding indictment specified an additional overt act in Count 12 (the conspiracy Count).

The first six counts charge Scott McQuarrie with making misrepresentations to the FSA while obtaining a renewal of his loans in July 2011 and with converting pledged property. Count 3 alleges that Scott McQuarrie converted livestock, Count 4 involves a jib plow, Count 5 involves a dozer, and Count 6 involves the sale or conversion of corn and soybeans. The sales of the FSA

collateral allegedly occurred between 2011 and 2014. Counts 7, 8, 9, and 10 charge Scott McQuarrie with making false statements under oath in connection with his bankruptcy proceeding. Specifically, Count 7 charges him with testifying that he had not sold farm equipment. Count 8 charges McQuarrie with failing to disclose his interest in the Alpena General Store. Count 9 charges him with failing to disclose a $21,000 payment to Cheboygan Cement Products. And Count 10 contends that McQuarrie prepared false bankruptcy schedules that failed to disclose asset sales. Counts 11 and 12 charge Scott McQuarrie's parents with conspiring with their son to commit bankruptcy fraud. Finally, Counts 13 and 14 charge Scott McQuarrie and his parents with mail fraud and wire fraud. In Count 13, the Government alleges that Defendants engaged in a scheme to obtain fraudulently obtain fire insurance proceeds. In Count 14, the Government charges the Defendants with a false scheme to transfer funds.

By way of background, Scott McQuarrie sought Chapter 7 (liquidation) bankruptcy protection on September 25, 2014. Bankruptcy Case No. 14-22152. The petition was filed with the assistance of legal counsel Nancy A. Ward, an attorney practicing law in Alpena, Michigan. The Petition (signed under penalty of perjury by Scott McQuarrie) was accompanied by 45 pages of bankruptcy schedules reflecting total assets of $332,127.99 and liabilities of $693,221.01. The Farm Services Agency was Scott McQuarrie's largest creditor, and their relationship originated in 2001. Amended Schedules were filed on December 18, 2015, with the assistance of counsel Henry Knier, Jr. Bankruptcy Case No. 14-22152, ECF No. 39. In the interim (on October 28, 2014), Scott McQuarrie stipulated to provide FSA relief from the automatic stay to complete foreclosure proceedings on a number of parcels of his real estate.

On February 27, 2015, the United States Trustee, represented by Sean Cowley, filed an adversary proceeding, pursuant to 11 U.S.C. § 727(a)(2) and (4), seeking a denial of discharge.

Case No. 15-02024, ECF No. 1. That was followed by a second adversary proceeding, filed on March 5, 2015, by Assistant United States Attorney Kevin Erske on behalf of the United States Department of Agriculture. Bankruptcy Case No. 15-02027. In that second adversary proceeding, the Department of Agriculture sought a declaration that Scott McQuarrie's debts owed to the FSA (in the amount of "not less than $190,750," were nondischargeable pursuant to 11 U.S.C. §§ 523(a)(6) and (a)(2)(b). The initial adversary proceeding was dismissed by stipulation on February 10, 2016, and Scott McQuarrie received a discharge on his debts on that date. The later adversary proceeding has been stayed without date.

On December 7 and 8, 2017, the Defendants filed a number of motions in this criminal proceeding. Yvonne McQuarrie has filed a motion to dismiss Counts 11, 13, and 14, of the second superseding indictment or, in the alternative, for a bill of particulars. ECF No. 60.[1] Scott McQuarrie has also filed a motion for a bill of particulars related to Counts 3, 6, 10, 11, 13, and 14. ECF No. 62. David McQuarrie has filed a motion to sever Counts 1 through 6, 7 through 12, and 13 through 14, respectively, for separate trials. ECF No. 62. Finally, Scott McQuarrie has filed a motion requesting that the Government identify "any and all information relative to any un-indicted witnesses if they intend to introduce hearsay" statements of coconspirators, and further requesting that the Court hold a pretrial hearing on the admissibility of any such statements. ECF No. 62.

For the following reasons, the motion to sever and the motion for a pretrial hearing on the admissibility of coconspirator statements will be denied. The two motions for a bill of particulars will be granted in part.

**I.**

**A.**

---

[1] Given the minimal changes in the third superseding indictment (filed after the motions for a bill of particulars had been filed and briefed), the filing of that document does not change the Court's analysis.

David McQuarrie, joined by Yvonne McQuarrie, has moved for severance of the counts in the second (now third) superseding indictment. David and Yvonne, Scott's parents, are charged only in Counts 11, 12, 13, and 14. As explained above, first six counts charge Scott McQuarrie with making misrepresentations while renewing his FSA loans in July 2011 and with converting property pledged as security for those loans. Counts 7 through 10 charge Scott McQuarrie with making false statements during the pendency of his bankruptcy proceedings. Counts 11 and 12 charge all three Defendants with conspiracy to commit bankruptcy fraud by concealing assets. Counts 13 and 14 charge all three Defendants with mail fraud and wire fraud in connection with an alleged scheme related to a claim for fire insurance proceeds.

All Defendants in this prosecution were originally joined pursuant to Federal Rule of Criminal Procedure 8(b), which permits joinder of defendants "if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." The fourteen counts were joined in the same indictment pursuant to Federal Rule of Criminal Procedure 8(a). That Rule permits joinder of offenses if they "are of the same or similar character, or are based in the same act or transaction, or are connected with or constitute parts of a common scheme or plan." *Id.* "For the sake of promoting efficiency and avoiding the potential for inconsistent verdicts, joint trials of defendants who are indicted together are actually encouraged rather than discouraged." *United States v. Cope*, 312 F.3d 757, 779 (6th Cir. 2002). The public interest in joint trials is especially strong "when two defendants are accused of participating in a conspiracy or joint scheme." *Id.* at 780.

Federal Rule of Criminal Procedure 14(a) provides that "[i]f the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants'

trials, or provide any other relief that justice requires." However, "[s]everance is required 'only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence.'" *United States v. Walls*, 293 F.3d 959, 966 (6th Cir. 2002) (quoting *Zafiro v. United States*, 506 U.S. 534, 539 (1993)). "Mutually antagonistic defenses are not prejudicial per se," especially because limiting instructions by the district court can often cure any prejudice. *Zafiro*, 506 U.S. at 538–39. "To prevail on a request for severance the defendant must show compelling, specific, and actual prejudice." *Thomas v. United States*, 849 F.3d 669, 675 (6th Cir. 2017).

Defendants allege that severance is appropriate because the third superseding indictment charges "at least three very distinct groups of offenses." Mot. Sever at 6, ECF No. 61. And it is true that logical distinctions can be made between the types of offenses charged. But, considering the strong public interest in judicial efficiency and in limiting the risk of inconsistent verdicts, more must be shown to justify severance. The Government's theory, as reflected in numerous status conferences and in their response to Defendants' motion for severance, is that David and Yvonne McQuarrie were intimately involved in Scott McQuarrie's alleged misfeasance. The Government contends that the evidence at trial will demonstrate that "Scott McQuarrie used livestock and equipment that he and his parents now claim actually belonged to David McQuarrie to make it appear to FSA employees that Scott McQuarrie in fact owned the . . . collateral." Gov. Resp. Mot. Sever. at 3–4, ECF No. 66. In fact, the Government alleges that "David McQuarrie at times facilitated the conversion of collateral" and even "was the recipient of the converted collateral." *Id.* at 4.

As regards the bankruptcy counts, the Government asserts that the three Defendants cooperated in a similar manner. Specifically, the Government contends that Scott McQuarrie

concealed certain transactions during the bankruptcy proceedings "by conducting some of the transactions in David McQuarrie's name." *Id.* The Government further believes "that Scott McQuarrie's parents received and concealed the proceeds of the sales in their financial accounts until the sale proceeds were dispersed according to Scott McQuarrie's directives." *Id.*

Finally, the Government has charged all three Defendants with wrongdoing related to Scott McQuarrie's claim for proceeds from his fire insurance policy. The Government alleges that David and Yvonne McQuarrie were both actively involved in the fraud. According to the Government, Scott McQuarrie's home was "pledged as collateral for a FSA loan and insurance through David McQuarrie's insurance agency." *Id.* at 6. The house was destroyed in a fire, and Scott McQuarrie collected $30,000 directly from his father's insurance company for the lost contents of the house. Scott McQuarrie then allegedly convinced the FSA to pay him $30,000 "for lost contents out of the joint insurance check sent by mail to FSA and Scott McQuarrie to replace the structure, rather than the contents." *Id.* at 6–7. The $30,000 check sent by the FSA was transferred through financial accounts held by David and Yvonne McQuarrie, and then Yvonne McQuarrie wrote a $28,000 check to FSA on Scott McQuarrie's behalf to prevent foreclosure on the FSA loans. The Government further alleges that "the McQuarries also falsely claimed to FSA that Scott McQuarrie had obtained the $28,000 by selling cattle to David McQuarrie and thereby kept FSA from liquidating the cattle (FSA's collateral)." *Id.* at 7.

Joinder was appropriate here. The third superseding indictment charges distinct groups of offenses, but the Government is alleging a course of conduct that included all three Defendants which can fairly be described as a "series of acts or transactions." Rule 8(b). According to the Government, David and Yvonne have facilitated consistent efforts by Scott McQuarrie to conceal the location and ownership of assets which were pledged as collateral to the FSA and/or were part

of the bankruptcy estate. The Government alleges that "many of the overt acts alleged in the conspiracy charge in count 12 are also acts which constitute proof of the substantive offenses charged . . . in counts 1 through 10." *Id.* at 6. Indeed, if true, the allegations throughout the second superseding indictment contextualize David and Yvonne's conduct by providing motive. *Id.* at 7.

David and Yvonne McQuarrie are only charged in four of the fourteen counts, and thus there is some risk that the jury's consideration of the remaining counts might impact its consideration of the charges against David and Yvonne. But more must be shown to justify severance. *See United States v. Causey*, 834 F.2d 1277, 1287–88 (6th Cir. 1987) ("The presentation of evidence applicable to more than one defendant is simply a fact of life in multiple defendant cases."). All offenses charged "are of the same of similar character": financial transactions and representations meant to shield Scott McQuarrie from financial and legal obligations. Rule 8(a). The Government contends that David and Yvonne have actively facilitated the financial obfuscation which forms the basis for all fourteen counts. If true, then all Defendants are involved in the "same series of acts or transactions." Rule 8(b). To the extent David and Yvonne may experience some prejudice through the joinder, that prejudice can be alleviated by a limiting jury instruction.[2] The motion for severance will be denied.

**B.**

Defendants also request an order for the Government to disclose all coconspirator hearsay statements which it anticipates relying upon at trial in accordance with Federal Rule of Evidence 801(d)(2)(E). That Rule allows admission of statements (that would otherwise be considered

---

[2] In its response, the Government suggests that the Court "subdivide the case into phases within the trial. This procedure would separate the evidence and verdict phases on groups of counts of the indictment that the court determines should be considered separately by a jury." Gov. Resp. Mot. Sever. at 9. Defendants have not responded to this suggestion, and so the Court will not subdivide the case at this time. But such a procedure might further judicial efficiency. The parties should be prepared to discuss this suggestion at the final pretrial conference.

hearsay) if it is a statement made "by the party's coconspirator during and in furtherance of the conspiracy." *Id.* Defendants correctly assert that, before such statements may be introduced at trial, the Court must find "(1) that the conspiracy existed; (2) that the defendant was a member of the conspiracy; and (3) that the co-conspirator's statements were made in furtherance of the conspiracy." *United States v. Wilson*, 168 F.3d 916, 920 (6th Cir. 1999). This analysis is referred to as an *Enright* finding. *See United States v. Enright*, 579 F.2d 980, 986-87 (6th Cir.1978).

Defendants argue that the *Enright* finding should occur in advance of trial and thus the Government should be compelled to identify any statements it intends to offer under Rule 801(d)(2)(E) prior to trial. However, the pretrial, mini-hearing which Defendants request is not the only option. In the Sixth Circuit, district courts may proceed in one of three ways: hold the "mini-hearing" prior to trial; "require the government to meet its initial burden by producing the non-hearsay evidence of conspiracy first prior to making the *Enright* finding"; or "admit the hearsay statements subject to later demonstration of their admissibility by a preponderance of the evidence." *United States v. Vinson*, 606 F.2d 149, 152–53 (6th Cir. 1979).

The mini-hearing procedure which Defendants request has been "criticized as burdensome, time-consuming and uneconomic" and would be so here. *Id.* at 152. The other two permissible procedures identified in *Vinson* properly balance the need for efficiency while minimizing the risk of improper evidence being admitted.[3] If, at trial, any Defendants intend to challenge the admissibility of statements under *Enright*, a decision on which procedure to adopt will be made. But litigating the admissibility of any co-conspirator statements in advance of trial would require, essentially, another trial. That is not necessary because Defendants' rights can be adequately

---

[3] If, as the Government requests, the *Enright* analysis is conducted after all evidence of the conspiracy has been presented to the jury, and the Court finds that the Government has not carried its burden under *Enright*, then the presumptive remedy is a mistrial. *See Vinson*, 606 F.2d at 153.

protected without pretrial disclosure of any hearsay statements the Governments intends to rely on. For that reason, the motion for pretrial disclosure of coconspirator statements will be denied.

## C.

### 1.

Finally, the two motions for a bill of particulars will be granted in part. Yvonne McQuarrie has requested a bill of particulars related to Counts 11, 13, and 14. ECF No. 60. Scott McQuarrie has requested a bill of particulars related to Counts 3, 6, 10, 11, 13, and 14. ECF No. 62. David McQuarrie has joined in Yvonne McQuarrie's motion. ECF No. 64.

Pursuant to Federal Rule of Criminal Procedure 7(f),

> The court may direct the government to file a bill of particulars. The defendant may move for a bill of particulars before or within 14 days after arraignment or at a later time if the court permits. The government may amend a bill of particulars subject to such conditions as justice requires.

*Id.*

"A bill of particulars is meant to be used as a tool to minimize surprise and assist defendant in obtaining the information needed to prepare a defense and to preclude a second prosecution for the same crimes." *United States v. Salisbury*, 983 F.2d 1369, 1375 (6th Cir. 1993). However, a motion for a bill of particulars is "not meant as a tool for the defense to obtain detailed disclosure of all evidence held by the government before trial." *Id.* And "a defendant is not entitled to discover all the overt acts that might be proven at trial." *Id.*

"The grant or denial of a motion for a bill of particulars lies within the sound discretion of the trial court." *United States v. Rey*, 923 F.2d 1217, 1222 (6th Cir. 1991). When faced with a motion for a bill of particulars, courts sometimes consider "the complexity of the charges, the clarity of the indictment, and the degree of discovery available to the defense absent a bill of particulars." *United States v. Vasquez-Ruiz*, 136 F. Supp. 2d 941, 943 (N.D. Ill. 2001). If a

defendant has received "ample discovery" which is sufficient to answer the questions advanced in the defendant's motion for a bill of particulars, then the district court does not abuse its discretion in denying the motion. *See United States v. Page*, 575 F. App'x 641, 643 (6th Cir. 2014) (emphasizing that the defendant did "not claim that his discovery process was in fact unmanageable or that he was unable to prepare a defense"). In other words, full "access to discovery . . . weakens the case for a bill of particulars." *United States v. Urban*, 404 F.3d 754, 772 (3d Cir. 2005). *See also United States v. Tillotson*, 490 F. App'x 775, 778 (6th Cir. 2012) (holding that denial of the motion for a bill of particulars was not an abuse of discretion because the defendant could have avoided surprise at trial simply be diligently reviewing discovery).

On the other hand, the Government does not necessarily fulfill its obligation of providing fair notice of the charges "merely by providing mountains of documents to defense counsel." *United States v. Bortnovsky*, 820 F.2d 572, 575 (2d Cir. 1987). *See also Page*, 575 Fed. App'x at 643 (declining to follow *Bortnovsky* because the defendant had not claimed that the discovery process was "unmanageable or that he was unable to prepare a defense"). Similarly, the Government cannot defend against a motion for a bill of particulars by asserting that "'[t]he defendant knows what he did, and has all the information necessary.'" Leipold, 1 Fed. Prac. & Proc. Crim. § 130 (4th ed.) (quoting *United States v. Smith*, 16 F.R.D. 372, 375 (W.D. Mo. 1954)). That argument presumes that the defendant is guilty. Because the Constitution requires that the defendant be presumed innocent, the defendant should also be presumed ignorant of the factual basis for the charges. *Id.*

Often, a bill of particulars will be necessary to clarify the alleged date and location of certain charged actions. *See United States v. Sanders*, 462 F.2d 122, 123 (6th Cir. 1972) (affirming the district judge's order "to state with more particularity the date on which the alleged possession

occurred and to designate the place with particularity and to allege the city and state"); *United States v. Dirr*, No. 3:08-CR-42, 2009 WL 2169871, at *2 (E.D. Tenn. July 21, 2009) (ordering the Government to "provide a bill of particulars listings all locations that comprise the 'and elsewhere' in which the conspiracy in Count One is alleged to have occurred"); *United States v. Ferguson*, 460 F. Supp. 1, 4 (E.D. Tenn. 1977) (ordering the Government to identify the specific date and location where certain offenses were alleged to have occurred).

One final matter is relevant to the consideration of the motions for a bill of particulars. "When a bill of particulars has been furnished, the government is strictly limited to the particulars which it has specified." *United States v. Haskins*, 345 F.2d 111, 114 (6th Cir. 1965). Accordingly, the Government could be prejudiced by an order to provide unduly specific details of the charges. However, "a variance between the proof and the bill of particulars is not grounds for reversal unless the defendant was prejudiced." *Id.* And, additionally, the Government may seek leave to amend a bill of particulars if the anticipated scope of its proofs changes after disclosure. *See United States v. Cole*, No. CR 87-L-14, 1987 WL 16357, at *7 (D. Neb. May 20, 1987) (collecting cases).

**2.**

Given the significant amount of discovery already provided, the necessity of a bill of particulars is a close question. As highlighted above, the bill of particulars should not be used simply to compel the Government to divulge its theory of the case or to identify every overt act upon which it will rely. But the mere fact that a bill of particulars might require the Government to divulge part of its legal theory or identify some of the overt facts it will rely upon is not a legitimate reason to deny the motion. Rather, the critical question raised by a motion for a bill of particulars is "whether the defendant needs the information to adequately defend himself at trial."

Leipold, 1 Fed. Prac. & Proc. Crim. § 130 (4th ed.). For several reasons, additional particularity is required here.

To begin with, the Government has provided thousands of pages of financial records, in addition to recorded interviews, grand jury transcripts, and bank records. That is true, in part, because FSA has an extensive history with the debtor. FSA's first three loans to Scott McQuarrie were made in 2001 and 2002 and have been renewed on numerous occasions. On each such instance, FSA has passed on the suitability of the loan renewals. When the Government has adopted a liberal discovery policy, a bill of particulars will often be unwarranted. But, as indicated above, that rationale has a limit. Both the Second Circuit and the Sixth Circuit have recognized that, in certain situations, *overdisclosure* by the Government can necessitate a bill of particulars. *See Bortnovsky*, 820 F.2d at 575; *Page*, 575 Fed. App'x at 643. And that assertion is unremarkable. A defendant may be denied notice of the charges both when information is actively concealed and when the relevant information is provided in a manner reminiscent of the proverbial needle in the haystack. Furthermore, the mere fact that much of the information provided was originally seized from the Defendants is nondispositive. As explained above, the presumption of innocence requires also that the Defendants be presumed uninformed of the Government's particular factual theory of wrongdoing.

Accordingly, the breadth of discovery disclosed by the Government can provide sufficient notice only if the allegations in the indictment are sufficiently specific to place the discovery in context. Here (and as discussed below), several counts in the second superseding indictment do not provide sufficient context.

One final consideration impacts the Court's decision to discretionarily order a bill of particulars. All Defendants in this matter are represented by appointed attorneys. Accordingly, the

United States is funding all sides in this prosecution and at considerable expense. The broader the scope of discovery and the less specific the allegations in the indictment, the greater the likelihood of unnecessary expenses. In its response to Defendants' motion for a pretrial hearing on the admissibility of coconspirator statements, the Government notes the Court's previously expressed admonishment that "the McQuarrie defendants are entitled to fair proceedings, but not to consume a disproportionate share of the available resources to the detriment of other litigants with matters pending before the court." Gov. Resp. Mot. Pretrial Hr. at 3, ECF No. 68. A similar rationale applies to the Government: the United States is entitled to prosecute within the constitutional bounds of its discretion, but it also has a duty to mitigate the expense to the United States of prosecutions when possible.

The counts specifically challenged by Defendants will be individually reviewed below.[4] In considering each count, an effort will be made to balance the Defendants' interest in notice of the charges and minimization of surprise at trial, the Government's interest in an unconstrained theory of the case, and the public's interest in cost-effective proceedings. The motions for a bill of particulars will be granted in part.[5]

**i.**

Scott McQuarrie requests a bill of particulars related to Count 3 of the second (now third) superseding indictment.[6] That Count reads, in full:

---

[4] Defendant Scott McQuarrie seeks a bill of particulars related to Counts 3, 6, 10, 11, 13, and 14. Defendant Yvonne McQuarrie (joined by David McQuarrie) seeks a bill of particulars related to counts 11, 13, and 14.

[5] In its responses to the Defendants' motions for a bill of particulars, the Government argues primarily that no bill of particulars is necessary. The Government does briefly address why the details provided in Counts 11, 13, and 14 of the second superseding indictment are sufficient to provide notice. The Government does not mention the other three Counts which Scott McQuarrie identifies as unduly vague in his motion and likewise does not specifically respond to the propriety of the type of information requested by Defendants in their motions.

[6] The only difference in the third superseding indictment comes in Count 12. As explained below, no bill of particulars is necessary for either Count 11 or Count 12.

> From on or about October 19, 2011, until on or about June 29, 2014, in the Eastern District of Michigan, Northern Division, defendant Scott David McQuarrie, with the intent to defraud, knowingly concealed, removed, disposed of, and converted to his own use or to that of another, property with a value in excess of § [sic] 1,000, that is livestock, specifically cattle, hogs, pigs, that was mortgaged and pledged to the Secretary of Agriculture, acting through the Farm Service Agency, a successor agency of the Farmers Home Administration, in violation of 18 U.S.C. §658.

Third Super. Indict. at 3, ECF No. 76.

Scott McQuarrie requests that the Government be ordered to (1) state the specific dates on which the alleged offenses were committed, (2) identify the specific type of livestock, (3) identify the person or entity that received the livestock, and (4) identify the related witnesses and exhibits that will be used by the Government at trial.

The first two requests are reasonable and will be granted. As explained above, information regarding the date, location, and other identifying characteristics of a given transaction are appropriate subjects of a bill of particulars. *See Sanders*, 462 F.2d at 123; *Dirr*, 2009 WL 2169871 at *2. The Count identifies a three-year time period and provides no specifics regarding the individual transactions which are the subject of the charge. Because Defendants own a farm, they likely engaged in many transactions regarding livestock during the time period in question (potentially both with third parties and among themselves). More specific allegations are necessary. However, the Government cannot be compelled to disclose the names of uncharged co-conspirators. *United States v. Crayton*, 357 F.3d 560, 568 (6th Cir. 2004). Similarly, a bill of particulars cannot be used to require the Government to provide "a list of the Government's witnesses." *United States v. Musick*, 291 F. App'x 706, 724 (6th Cir. 2008). The identity of the entities involved in the livestock transactions is not necessary to avoid prejudicial surprise at trial. The third request will be denied.

Similarly, the request for the Government to disclose the witnesses and exhibits it intends to use at trial is a thinly-veiled attempt to discover the Government's trial strategy. Information of that detail is not necessary to prepare an adequate defense or avoid surprise at trial, providing that the first two inquiries are answered. The Government will not be required to disclose the witnesses and exhibits it intends to use at trial.

### ii.

Next, Scott McQuarrie seeks a bill of particulars for Count 6, which reads:

> From on or about August 18, 2011, through February 19, 2013, in the Eastern District of Michigan, Northern Division, defendant Scott David McQuarrie, with the intent to defraud, knowingly concealed, removed, disposed of, and converted to his own use or to that of another, property with a value in excess of § [sic] 1,000, that is crops, specifically corn and soybeans, that was mortgaged and pledged to the Secretary of Agriculture, acting through the Farm Service Agency, a successor agency of the Farmers Home Administrative, in violation of 18 U.S.C. § 658.

Third Super. Indict. at 4–5.

As with Count 3, Scott McQuarrie seeks a response from the Government (1) stating the specific dates of the transactions in question, (2) identifying the specific type of crop sold, (3) identifying the person or entity to which the scope was sold, and then (4) identifying the related witnesses and exhibits the Government will rely upon at trial. For the same reasons provided while analyzing Count 3, the first two requests will be granted, and the third and fourth will not.

### iii.

The third Count which Scott McQuarrie challenges is Count 10. That Count reads as follows:

> On or about September 25, 2014 and on or about January 15, 2015, in the Eastern District of Michigan, defendant Scott McQuarrie knowingly and fraudulently made a material, false statement under the penalty of perjury, in and in relation to a bankruptcy case, by filing in his bankruptcy case Schedules of Assets and Liabilities and a Statement of Financial Affairs, in which Scott McQuarrie knowingly and fraudulently failed to disclose all assets that he had sold within two

> years immediately before he filed his bankruptcy petition and he failed to disclose his interest in property held by third persons, including money and a business, in violation of 18 U.S.C. § 152(3).

Third Super. Indict. at 7.

Scott McQuarrie requests a bill of particulars which (1) identifies the assets which he allegedly failed to disclose within two years before the filing of the bankruptcy petition, (2) identifies the date those assets were acquired, (3) identifies the property he had interest in and failed to disclose, (4) identifies the date that property was acquired, and (5) identifies the related witnesses and exhibits to be used at trial.

Because the bankruptcy proceedings involved a considerable number of assets, the Government will be required to identify the assets and property which the Government alleges that he improperly failed to disclose. The date that Scott McQuarrie acquired those assets and property is less relevant (because the determinative question is whether those interests existed during the pendency of the bankruptcy petition). And, further, Scott McQuarrie should be able to independently discover the date the assets were acquired upon their identification. Accordingly, the Government will be directed to identify the assets and property which Scott McQuarrie allegedly did not disclose. The Government will not be directed to identify the date those assets were acquired or to identify the witnesses and exhibits it will use at trial.

**iv.**

Next, all three Defendants seek a bill of particulars related to Count 11. That Count, charging bankruptcy fraud, reads:

> From at least February of 2014 to January of 2014, in the Eastern District of Michigan, Defendants Scott McQuarrie, David McQuarrie, and Yvonne McQuarrie knowingly and fraudulently transferred and concealed assets belonging to Scott McQuarrie in contemplation of Scott McQuarrie filing for bankruptcy, and aided and abetted each other in so doing, by concealing money received from the sale of

>assets belonging to Scott McQuarrie, all in violation of 18 U.S.C. § 152(7) and 2.
>[sic]

Third Super. Indict. at 8.

Defendant Scott McQuarrie requests that the Government (1) identify the nature of the fraudulent scheme, (2) identify the date the assets were transferred and concealed, (3) identify the specific defendant that was involved in each transfer, (4) identify the amount and form of the assets in each transfer, and (5) identify the related witnesses or exhibits. Defendant Yvonne McQuarrie requests "factual specificity as to the nature of the fraudulent scheme, activity date, person or entity, asset involved, amount, source and destination." Yvonne Mot. Dismiss at 2–3, ECF No. 60.[7] She also requests that the Government identify the dates of the sales and identify the assets sold.

In their motions, Defendants ignore the fact that they are also charged, in Count 12, with conspiracy to commit bankruptcy fraud. That Count spans an identical time frame and involves almost four full pages of specific allegations. Those allegations include over a page discussing the general nature of the fraudulent scheme and also provide almost a three page summary of the overt acts. The Government provides the dates of the overt acts, identifies the Defendants involved in each overt act, and specifies the amount and form of the assets involved. Thus, the conspiracy charge which accompanies the substantive charge in Count 11 provides a significant amount of detail. Defendants are not entitled to "detailed disclosure of all evidence held by the government before trial" nor are they "entitled to discover all the overt acts that might be proven at trial." *Salisbury*, 983 F.2d at 1375. Given the detail provided in Count 12, a bill of particulars for Count 11 would operate only to force the Government to disclose the precise means by which it intends to prove its case. No bill of particulars is necessary to enable Defendants to adequately defend against Count 11.

---

[7] Yvonne McQuarrie advances this request for Counts 11, 13, and 14.

**v.**

Next, all Defendants seek a bill of particulars for Count 13. That Count reads:

> From April of 2012 to April of 2013, in the Eastern District of Michigan, Northern Division, defendant Scott David McQuarrie, aided and abetted by defendants David Allen McQuarrie and Yvonne Evelyn McQuarrie, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money by means of false and fraudulent pretenses and representations, for the purpose of executing such scheme and artifice, and attempting so to do, caused another to place correspondence containing fire insurance proceeds in an authorized depository for mail matter to be sent and delivered by the Postal Service, and received that correspondence, in violation of 18 U.S.C. §§ 1341 and 2.

Third Super. Indict. at 12–13.

Scott McQuarrie requests that the Government (1) specifically describe the nature of the scheme, (2), identify the specific dates on which the offense occurred, and (3) identify the related witnesses and exhibits.

For the same reasons expressed repeatedly throughout this order, Defendants are entitled to know the specific dates of the transactions in question. Accordingly, the Government will be directed to respond to the second request. In their response to the motion to sever, the Government has provided a succinct summary of the factual basis for this Count. *See* Gov. Resp. Mot. Sever. at 6–7. Given those details, directing the Government to provide a bill of particulars which specifies the nature of the scheme would be redundant. And, of course, the Government will not be required to identify the witnesses and exhibits it will rely upon at trial. Thus, the Government must comply only with Defendants' second request.

**iv.**

Finally, Defendants request a bill of particulars for Count 14. That Count reads:

> From April of 2012 to April of 2013, in the Eastern District of Michigan, Northern Division, defendant Scott David McQuarrie, aided and abetted by defendants David Allen McQuarrie and Yvonne Evelyn McQuarrie, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money by means of false

and fraudulent pretenses and representations, for the purpose of executing such scheme and artifice, transmitted and caused the transmission of writings, signs and signals by means of wire communication in interstate commerce, that is the electronic transfer of funds between financial accounts, in violation of 18 U.S.C. §§ 1343 and 2.

Third Super. Indict. at 13–14.

Defendants request the same information that they sought with respect to Count 13, and for the same reasons, the Government will simply be directed to identify the specific dates of the transaction(s) in question.

## II.

Accordingly, it is **ORDERED** that Defendant David McQuarrie's motion to sever, ECF No. 61, is **DENIED.**

It is further **ORDERED** that Defendant Scott McQuarrie's motion for a pretrial hearing on the admissibility of coconspirator statements, ECF No. 63, is **DENIED.**

It is further **ORDERED** that Defendants' motions for bill of particulars, ECF Nos. 60, 62, are **GRANTED in part.**

It is further **ORDERED** that the Government is **DIRECTED** to provide a bill of particulars which responds to the deficiencies identified in this order **on or before January 22, 2018.**

Dated: January 11, 2018　　　　　　　　　　　　s/Thomas L. Ludington
　　　　　　　　　　　　　　　　　　　　　　　　THOMAS L. LUDINGTON
　　　　　　　　　　　　　　　　　　　　　　　　United States District Judge

---

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on January 11, 2018.

　　　　　　　　　　　　　　s/Kelly Winslow
　　　　　　　　　　　　　　KELLY WINSLOW, Case Manager