UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

UNITED STATES OF AMERICA,

               Plaintiff,              Case No. 16-cr-20499
v                                            Honorable Thomas L. Ludington

SCOTT DAVID MCQUARRIE,

               Defendant.
_____/

## ORDER DIRECTING ADDITIONAL BRIEFING ON MOTION TO DISMISS AND GRANTING MOTION TO ADJOURN TRIAL

Scott McQuarrie was indicted on June 13, 2016, with six counts alleging that he made false statements and converted collateral pledged for a loan he received from the Farm Service Agency (FSA). ECF No. 1. On June 8, 2017, a superseding indictment was returned which charged Scott McQuarrie with twelve counts and which named his parents, David Allen McQuarrie and Yvonne Evelyn McQuarrie, as co-Defendants in two counts. On November 1, 2017, a second superseding indictment was issued which charged the three Defendants with an additional two counts, for a total of fourteen counts. ECF No. 42. On January 10, 2018, and February 14, 2018, third and fourth superseding indictments were issued. ECF No. 76, 103.

**I.**

Two days before jury selection occurred, Scott McQuarrie filed a motion to dismiss Count Four of the fourth superseding indictment. ECF No. 130. Count Four of the fourth superseding indictment charges Scott McQuarrie with the conversion or concealment of a TW 35 tractor which had been pledged by Scott McQuarrie as collateral to the Secretary of Agriculture, in violation of 18 U.S.C. § 658. The original indictment also includes a Count Four. There are two differences between the original Count Four and the Count Four in the fourth superseding indictment. First,

the collateral was identified as a "jib plow" in the original indictment and identified as a "TW 35 tractor" in the fourth superseding indictment. Second, the crime is alleged to have occurred sometime after March 3, 2012, in the original indictment, but after July 20, 2011, in the fourth superseding indictment.

Scott McQuarrie argues that Count Four of the fourth superseding indictment should be dismissed because it falls outside the five year statute of limitations for the offense of conversion. Mot Dismiss at 1, ECF No. 130 (citing § 18 U.S.C. § 3282). He argues that, because the fourth superseding indictment was filed on February 14, 2018, and Count Four took place sometime after July 20, 2011, Count Four falls outside the five year statute of limitations.

On May 19, 2018, the day before trial began, the Court issued an order providing notice that Count Four might be severed. ECF No. 133. In that Order, the Court indicated that the change to Count Four constituted a substantive change which broadened the charges being advanced against Scott McQuarrie. For that reason, the fourth count of the fourth superseding indictment did not relate back to the original indictment for statute of limitations purposes. Nevertheless, because the Government had not responded to the motion to dismiss, the Court declined to resolve the motion to dismiss on its merits.

During trial, Count Four was severed. On March 25, 2018 (midway through trial), the Government responded to the motion to dismiss. ECF No. 141. In that response, the Government argues that Count Four is not barred by the statute of limitations because it is a continuing offense which continues to this day. The jury found Scott McQuarrie guilty of twelve of the fourteen charged counts. ECF No. 147. The only unresolved charge is Count Four. Trial on that count is currently set to begin on April 17, 2018.

On April 4, 2018, Scott McQuarrie filed a motion to adjourn trial and a motion to change

venue for the trial on Count Four. ECF Nos. 162, 163. The Government has not responded to those motions yet. However, because additional briefing on Scott McQuarrie's motion to dismiss is necessary, the trial will be briefly adjourned.

## II.

For the reasons stated in the Court's March 19, 2018, order, Count Four of the fourth superseding indictment does not relate back to the date the original indictment was filed. Accordingly, Count Four was timely filed only if the statute of limitations had not expired on February 14, 2018, when the fourth superseding indictment was issued.

### A.

Generally speaking, the "'statute of limitations . . . begins to run when the crime is complete.'" *Toussie v. United States*, 397 U.S. 112, 115 (1970) (quoting *Pendergast v. United States*, 317 U.S. 412, 418(1943)). The statute of limitations should not be extended "[e]xcept as otherwise expressly provided by law." 18 U.S.C. § 3282. Continuing offenses constitute an exception to that general rule. The Supreme Court has, however, cautioned that "the doctrine of continuing offenses should be applied in only limited circumstances." *Toussie*, 397 U.S. at 115. Specifically, an offense should not "be construed as a continuing one . . . unless the explicit language of the substantive criminal statute compels such a conclusion, or the nature of the crime involved is such that Congress must assuredly have intended that it be treated as a continuing one." *Id.*

Count Four charges Scott McQuarrie with violation of 18 U.S.C. § 658. That statute does not mention the statute of limitations, much less designate the offense as a continuing one. See *United States v. Banks*, 708 F. Supp. 2d 622, 624 (E.D. Ky. 2010) (concluding that the statute did not designate the offense as continuing because it did "not use the term 'continuing offense' or

even mention the statute of limitations'"). Accordingly, the determinative question is whether the nature of the crime defined in § 658 "is such that Congress must *assuredly* have intended it to be . . . a continuing one."

For several reasons, additional briefing is necessary on the question of whether Congress "assuredly" intended § 658 to be a continuing offense. "The hallmark of the continuing offense is that it perdures beyond the initial illegal act, and that 'each day brings a renewed threat of the evil Congress sought to prevent' even after the elements necessary to establish the crime have occurred." *United States v. Yashar*, 166 F.3d 873, 875 (7th Cir. 1999) (quoting *Toussie*, 397 U.S. at 122). In other words, continuing offenses involve "continuing threat[s] to society." *United States v. Bailey*, 444 U.S. 394, 413 (1980). "The often cited examples of continuing offenses are conspiracy, escape, kidnaping, bigamy, and gun possession crimes." *Banks*, 708 F. Supp. 2d at 624. However, "[s]tatus crimes can be continuing offenses." *United States v. Collier*, 68 F. App'x 676, 680 (6th Cir. 2003) (citing *United States v. Newman*, 134 F.3d 373 (6th Cir.1998) (holding that gun possession is a continuing offense)).

"Courts do not traditionally consider theft a continuing offense. A man who breaks into a bank vault five times in a month has committed five separate offenses, not a single continuing one." *United States v. Tackett*, No. CRIM. 11-15-ART, 2011 WL 4005347, at *4 (E.D. Ky. Sept. 8, 2011). Multiple, repeated bank robberies are separate offenses "because after the thief makes off with the money the first time, the 'evil Congress sought to prevent,' *Toussie*, 397 U.S. at 122, has ended. The 'evil' may resume a few days later when the thief steals again, but it is a new evil, separate from the first." *Id.* However, if a criminal formulates a scheme which results in the unlawful taking or diversion of funds on a recurring basis, the theft or embezzlement is a continuing offense. *Id.* "Just as in cases of conspiracy or kidnapping, the criminal who sets up a

recurring plan to steal government money poses a continuing threat to society every day until the plan stops." *Id.* (internal citations omitted). *See also United States v. Del Percio*, 870 F.2d 1090, 1096 (6th Cir. 1989) (noting that Congress has classified concealment of bankruptcy assets as a continuing offense).

And, similarly, crimes involving elements of possession or concealment can constitute continuing offenses. For example, in *Banks* the district court concluded that concealment of information relating to the defendant's continued right to social security benefits was a continuing offense. *See* 708 F. Supp. 2d at 625. The district court reasoned that the defendant had a "continuing obligation to disclose events that affect benefits" and emphasized that "her continued, repeated receipt of undeserved benefits through concealment was precisely the 'substantive evil' that Congress sought to prevent" by enacting the law. *Id.* at 626–27. *See also Tackett*, 2011 WL 4005347 at *6 ("The crime of retaining stolen funds necessarily continues until the criminal's possession ends, so Congress must have intended retention to be treated as a continuing offense.").

However, a crime is not necessarily a continuing offense simply because the defendants concealed something they had an obligation to disclose. For example, in *United States v. Del Percio*, the defendants were charged with failure to submit safety plans and make required modifications to their nuclear power plant as required by federal law. *See* 870 F.2d 1090, 1097 (6th Cir. 1989). Defendants were charged with violation of 42 U.S.C. § 2131, which makes it unlawful "for any person . . . [to] transfer, acquire, possess, use, import, or export any utilization or production facility" under in accordance with an atomic energy license issued by the Nuclear Regulatory Commission. *Id.* The Government argued that because the statute criminalized the possession and use of a "nuclear facility in violation of NRC license conditions," the charged offense involved a continuing course of conduct and thus constituted a continuing offense. *Id.* at

1096. The Sixth Circuit rejected that argument, explaining that "the defendants' 'possessory actions became unlawful only upon their alleged failure to comply with the pertinent safety regulations." *Id.* at 1097. The Sixth Circuit further explained that "the defendants did not attempt to conceal the alleged violations from the NRC or otherwise preclude the government from discovering the alleged offenses," notwithstanding their obligation to disclose them. *Id.* The court emphasized that "the government was aware well prior to the expiration of the limitations period that the defendants might be guilty of criminal violations." *Id. See also Toussie*, 397 U.S. at 122 (holding that failing to register for the draft was not a continuing offense because the crime was committed when the deadline to register expired).

**B.**

These cases can be synthesized through emphasis on the principle, identified in *Bailey*, that continuing offenses are those where each day results in additional threat or harm to society which Congress intended to address. Thus, kidnapping is a continuing offense because the injury to the victim is inflicted anew each day. Similarly, concealment of bankruptcy assets and concealment of information relating to entitlement to social security benefits are continuing offenses because the continued concealment results in unlawful financial benefits to the perpetrator. On the other hand, bank robbery is not a continuing offense, despite the fact that the robber may possess the stolen money for a period of time, because the benefit to the perpetrator and the harm Congress was addressing was the original robbery. Likewise, the theft of federal funds is not a continuing offense (but *retaining* stolen federal funds is). *United States v. Tackett*, No. CRIM. 11-15-ART, 2011 WL 4005347, at *5 (E.D. Ky. Sept. 8, 2011). When determining whether financial crimes are continuing offenses, a helpful touchstone is whether the defendant's criminal behavior resulted in "'the taking or diversion of sums of money on a recurring basis.'" *Banks*, 708 F. Supp. 2d at

626 (quoting *United States v. Thompkins*, No. CRIM. 1:08CR65, 2008 WL 3200629, at *2 (W.D.N.C. Aug. 5, 2008)).

Count Four of the fourth superseding indictment charges Scott McQuarrie with "Conversion/Concealment of Property Pledged to Farm Credit Agency." Fourth Sup. Ind. at 3, ECF No. 103. Count Five, the only other count to allege a violation of 18 U.S.C. § 658 with respect to a piece of equipment, alleges that the offense was committed on a specific date. Although Count Four alleges that the offense was committed "[s]ometime after July 20, 2011," the indictment implies that it was committed at a "precise time," not a span of time. *Id.* The "conversion" of pledged collateral is clearly a discrete event which occurs at the time the transaction is completed. Thus, if Scott McQuarrie sold the TW 35 tractor to his father, the "conversion" offense was completed at the time of the sale, and the statute of limitations began to run.

The Government, however, has also charged Scott McQuarrie with "concealment" of the TW 35 tractor. Citing *Banks* for the proposition that concealment crimes should be construed as continuing offenses, the Government argues that Count Four charges a continuing offense. In fact, the Government contends that "the charg[ed] concealment began sometime [after] July 20, 2011, but continues to today." Gov. Resp. Mot. Dismiss at 4. In Count Five, the Government alleges only that Scott McQuarrie converted a 1150C dozer. In Count Four, the Government alleges both conversion *and* concealment. This subtle distinctions in the fourth superseding indictment suggests that the Government believes that Scott McQuarrie violated § 658 with respect to the TW 35 tractor by doing something *other* than merely selling it to his father.

The Government's response brief indicates that David McQuarrie has assisted in the concealment of the tractor by "falsely claiming ownership of it." *Id.* at 3 n.1. That assertion implies that the Government believes that Scott McQuarrie did not, in fact, sell the tractor. The

Government has not identified what about the transfer of the tractor to David McQuarrie is distinguishable from the transfer of the 1150C dozer.

Assuming that the Government believes that Scott McQuarrie merely concealed the TW 35 tractor (as opposed to selling it), the question then becomes whether the concealment inflicted additional harm the longer it continued. If Scott McQuarrie retained ownership of the TW 35 tractor, then it is unclear why the Government believes that he violated § 658. The "evil Congress sought to prevent" in passing § 658 was to ensure that debtors of the Farm Service Agency do not defraud the FSA by depriving the FSA of its collateral. *See United States v. Kramel*, 234 F.2d 577, 582 (8th Cir. 1956) ("[S]ection 658 states a clear intention to protect the collateral given the Farmers Home Administration from conscious fraud."). If the debtor sells the collateral, then the FSA has lost its collateral. If the debtor conceals the collateral, then the FSA is prevented from seizing the collateral. In either situation, the FSA has lost the financial protection previously provided by the collateral.

In other words, unless the FSA was thwarted in an attempt to seize the collateral, then concealment of the collateral does not appear to harm the FSA. And, certainly, the concealment does not continue past the date when the Government becomes aware of the collateral's location. *See Del Percio*, 870 F.2d at 1097. Because the Government located the tractor at least by March 2015 (when Agent McCluchey interviewed David McQuarrie), the concealment does not continue to this day, as the Government suggests. *Compare* Gov. Resp. Mot. Dismiss at 3 *with id.* at 4. Relatedly, the Government has not indicated whether the concealment has resulted in additional or recurring financial benefits to Scott McQuarrie. *See Banks*, 708 F. Supp. 2d at 626–27. Absent some reason to believe that the FSA sought to seize the tractor or that Scott McQuarrie obtained loan restructuring (post-2011) based upon representations that the tractor was available as

collateral, the alleged concealment did not benefit Scott McQuarrie or harm the FSA.

Because neither party has briefed these issues, supplemental briefing is necessary. The Government's brief should address the nature of the "concealment" it believes Scott McQuarrie engaged in. In particular, the Government should identify what distinguishes Count Four from Count Five. The Government should likewise address the harms to the FSA and benefits to Scott McQuarrie which it believes the concealment created. In articulating the harms and benefits, the Government should take care to explain how they were exacerbated by the period of concealment. Finally, the Government should identify the date when the FSA first discovered that the tractor was located on David McQuarrie's farm.[1]

### III.

Accordingly, it is **ORDERED** that the Government is **DIRECTED** to file a supplemental brief addressing the issues identified in this Order **on or before April 16, 2018.**

It is further **ORDERED** that Defendant Scott McQuarrie is **DIRECTED** to file a response brief to the Government's supplemental brief **on or before April 23, 2018.**

It is further **ORDERED** that the Government is **DIRECTED** to file a reply brief, if desired, **on or before April 27, 2018.**

It is further **ORDERED** that Defendant Scott McQuarrie's motion to adjourn trial, ECF No. 162, is **GRANTED.**

It is further **ORDERED** that trial is **ADJOURNED** to **May 22, 2018, at 8:30 a.m**.

Dated: April 6, 2018                                s/Thomas L. Ludington
                                                    THOMAS L. LUDINGTON
                                                    United States District Judge

---

[1] Because supplemental briefing will be ordered, an adjournment of trial is necessary. Scott McQuarrie's motion to adjourn will be granted. Until the timeliness of Count Four is resolved, it would be premature to consider Scott McQuarrie's motion to change venue.

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on April 6, 2018.

                                              s/Kelly Winslow
                                              KELLY WINSLOW, Case Manager