UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

UNITED STATES OF AMERICA,

                Plaintiff,                Case No. 16-cr-20499-01

v                                          Honorable Thomas L. Ludington

D-1, SCOTT DAVID MCQUARRIE,

                Defendant.

_____/

## ORDER DENYING DEFENDANT'S MOTION TO DISMISS AND DENYING MOTION TO TRANSFER

Scott McQuarrie was indicted on June 13, 2016, with six counts alleging that he made false statements and converted collateral pledged for a loan he received from the Farm Service Agency (FSA). ECF No. 1. On June 8, 2017, a superseding indictment was returned which charged Scott McQuarrie with twelve counts and which named his parents, David Allen McQuarrie and Yvonne Evelyn McQuarrie, as co-Defendants in two counts. On November 1, 2017, a second superseding indictment was issued which charged the three Defendants with an additional two counts, for a total of fourteen counts. ECF No. 42. On January 10, 2018, and February 14, 2018, third and fourth superseding indictments were issued. ECF No. 76, 103. A trial on the fourth superseding indictment was held in late March of 2018.

**I.**

Two days before jury selection occurred, Scott McQuarrie filed a motion to dismiss Count Four of the fourth superseding indictment. ECF No. 130. Count Four of the fourth superseding indictment charges Scott McQuarrie with the conversion or concealment of a TW 35 tractor which had been pledged by Scott McQuarrie as collateral to the Secretary of Agriculture, in violation of 18 U.S.C. § 658. The original indictment also includes a Count Four. There are two differences

between the original Count Four and the Count Four in the fourth superseding indictment. First, the collateral was identified as a "jib plow" in the original indictment and identified as a "TW 35 tractor" in the fourth superseding indictment. Second, the crime is alleged to have occurred sometime after March 3, 2012, in the original indictment, but sometime after July 20, 2011, in the fourth superseding indictment.

Scott McQuarrie argues that Count Four of the fourth superseding indictment should be dismissed because it falls outside the five year statute of limitations for the offense of conversion. Mot Dismiss at 1, ECF No. 130 (citing § 18 U.S.C. § 3282). He contends that, because the fourth superseding indictment was filed on February 14, 2018, and Count Four took place sometime after July 20, 2011, Count Four falls outside the five year statute of limitations.

On May 19, 2018, the day before trial began, the Court issued an order providing notice that Count Four might be severed. ECF No. 133. In that Order, the Court indicated that the change to Count Four constituted a substantive change which broadened the charges being advanced against Scott McQuarrie. Thus, the fourth count of the fourth superseding indictment did not relate back to the original indictment for statute of limitations purposes. Nevertheless, because the Government had not responded to the motion to dismiss, the Court declined to resolve the motion to dismiss on its merits.

During trial, Count Four was severed. On March 25, 2018 (midway through trial), the Government responded to the motion to dismiss. ECF No. 141. In that response, the Government argues that Count Four is not barred by the statute of limitations because it is a continuing offense which continues to this day. The jury found Scott McQuarrie guilty of twelve of the fourteen charged counts. ECF No. 147. The only unresolved charge is Count Four. Trial on that count is currently set to begin on May 22, 2018.

On April 6, 2018, the Court issued an order directing supplemental briefing on Scott McQuarrie's motion to dismiss Count Four. ECF No. 164. In that order, the Court explained that "Count Four of the fourth superseding indictment does not relate back to the date the original indictment was filed." April 6, 2018, Order at 3. For clarity, additional portions of the April 6, 2018, order will be reproduced here.

> Generally speaking, the "'statute of limitations . . . begin to run when the crime is complete.'" *Toussie v. United States*, 397 U.S. 112, 115 (1970) (quoting *Pendergast v. United States*, 317 U.S. 412, 418(1943)). The statute of limitations should not be extended "[e]xcept as otherwise expressly provided by law." 18 U.S.C. § 3282. Continuing offenses constitute an exception to that general rule. The Supreme Court has, however, cautioned that "the doctrine of continuing offenses should be applied in only limited circumstances." *Toussie*, 397 U.S. at 115. Specifically, an offense should not "be construed as a continuing one . . . unless the explicit language of the substantive criminal statute compels such a conclusion, or the nature of the crime involved is such that Congress must assuredly have intended that it be treated as a continuing one." *Id.*
>
> Count Four charges Scott McQuarrie with violation of 18 U.S.C. § 658. That statute does not mention the statute of limitations, much less designate the offense as a continuing one. *See United States v. Banks*, 708 F. Supp. 2d 622, 624 (E.D. Ky. 2010) (concluding that the statute did not designate the offense as continuing because it did "not use the term 'continuing offense' or even mention the statute of limitations'"). Accordingly, the determinative question is whether the nature of the crime defined in § 658 "is such that Congress must *assuredly* have intended it to be . . . a continuing one."

*Id.* at 3–4.

The Court explained that "'[c]ourts do not traditionally consider theft a continuing offense,'" but noted that some "'[s]tatus crimes can be continuing offenses. *Id.* at 4–5 (quoting *Bank*, 708 F. Supp. 2d at 625; *United States v. Collier*, 68 F. App'x 676, 680 (6th Cir. 2003)). The touchstone of continuing offenses is that they "involve 'continuing threat[s] to society.'" *Id.* at 4 (quoting *United States v. Bailey*, 444 U.S. 394, 413 (1980)). Sometimes that means that the "injury to the victim is inflicted anew each day" and sometimes that means that "the continued concealment results in [additional] unlawful financial benefits to the perpetrator." *Id.* at 6.

Ultimately, the Court directed the parties (and, in particular, the Government) to provide supplemental briefing:

> The Government's brief should address the nature of the "concealment" it believes Scott McQuarrie engaged in. In particular, the Government should identify what distinguishes Count Four from Count Five. The Government should likewise address the harms to the FSA and benefits to Scott McQuarrie which it believes the concealment created. In articulating the harms and benefits, the Government should take care to explain how they were exacerbated by the period of concealment. Finally, the Government should identify the date when the FSA first discovered that the tractor was located on David McQuarrie's farm.

*Id.* at 9.

That supplemental briefing has now been received, and Scott McQuarrie's motion to dismiss Count Four is ripe for adjudication.

**II.**

"When a defendant presses a limitations defense, the Government *then* bears the burden of establishing compliance with the statute of limitations by presenting evidence that the crime was committed within the limitations period or by establishing an exception to the limitations period." *Musacchio v. United States*, 136 S. Ct. 709, 718 (2016) (citing *United States v. Cook*, 84 U.S. 168, 181, 21 L. Ed. 538 (1872)) (emphasis in original). A defendant may raise a statute of limitations defense in a pretrial motion pursuant to Federal Rule of Criminal Procedure 12(b)(1). *See United States v. Hoskins*, 73 F. Supp. 3d 154, 159 (D. Conn. 2014). When a defense is raised pursuant to Rule 12(b), the Court must "accept all factual allegations in the indictment as true. *United States v. Martinez*, No. S1 94 CR 219 (RPP), 1995 WL 10849, at *2 (S.D.N.Y. Jan. 12, 1995) (citing *Costello v. United States*, 350 U.S. 359 (1956)). *See also United States v. Bicoastal Corp.*, 819 F. Supp. 156, 158 (N.D.N.Y. 1993) ("[W]here a grand jury has determined that there is probable cause to believe that a fact constituting an element of a crime has occurred, and where this fact is alleged in an indictment, a defendant may not challenge this factual assertion short of a trial on the

merits."). Accordingly, such motions "may be premature if the indictment is facially sufficient and the defendant's argument in favor of dismissal requires a determination of factual issues." *United States v. FNU LNU*, No. 06 CR. 846 (DAB), 2007 WL 1149261, at *2 (S.D.N.Y. Apr. 12, 2007).

### III.

### A.

Here, the Government has met its burden of demonstrating that the Count Four of the fourth superseding indictment was committed within the statute of limitations period. In its supplemental brief, the Government makes several factual assertions, corroborated by attached exhibits. As explained above, the Court is not the trier of fact and so its role in reviewing the factual evidence related to Count Four is necessarily limited. However, some factual background is necessary to contextualize the legal questions raised by McQuarrie's motion. McQuarrie's response to the Government's supplemental brief does not directly contest any of the factual allegations the Government advances. Rather, he simply contends that "[a]cts done by Defendant Scott McQuarrie after, or discussions about the TW35 with his father, do not constitute a continuing crime where the central objectives have already been attained." Def. Supp. Res. at 2, ECF No. 174. Because the primary dispute between the parties centers on the legal significance of certain facts, and not the facts themselves, the Government's factual contentions will be briefly considered.

On July 20, 2011, Scott McQuarrie pledged the TW 35 tractor as collateral for a loan with Farm Services Agency. Gov. Ex. 5, ECF No. 171, Ex. 1. According to the Government, some time after the agreement was signed, Scott McQuarrie moved the tractor to his father's farm. In March of 2015, Special Agent Mark McClutchey interviewed David McQuarrie. During those interviews, David McQuarrie admitted that the TW 35 tractor was on his farm. In fact, he claimed ownership of the tractor. Despite that assertion, none of the Defendants have produced any corroborating

documentation. The Government argues that this fact distinguishes Count Four from, for example, Count Five (which charges conversion of a dozer). Both Counts involve the FSA being deprived of pledged collateral. Scott McQuarrie sold the dozer to a third party, and that transaction is corroborated both by a deposit in Scott McQuarrie's credit union account and ledger entries prepared by Yvonne McQuarrie. *See* 2013 Ledger, ECF No. 171, Ex. 5. No similar documentation indicates that Scott McQuarrie sold the TW 35 tractor to David McQuarrie.

After Scott McQuarrie pledged the TW 35 tractor to FSA, he continued to act as if he owned the tractor. For example, Scott McQuarrie depreciated the tractor on his income tax returns, while David McQuarrie did not. And Scott McQuarrie maintained insurance coverage on the tractor from at least 2012–2013. *See* Gov. Ex. 96, ECF No. 171, Ex. 8. Until David McQuarrie was interviewed by special agent McClutchey in March 2015, the FSA had no reason to believe that the tractor had been moved, much less that David McQuarrie was asserting ownership of it.

**B.**

As explained above, the continuing offense analysis requires a determination of the kind of conduct which Congress intended to criminalize. *Toussie*, 397 U.S. at 115. "The hallmark of the continuing offense is that it perdures beyond the initial illegal act, and that 'each day brings a renewed threat of the evil Congress sought to prevent' even after the elements necessary to establish the crime have occurred." *United States v. Yashar*, 166 F.3d 873, 875 (7th Cir. 1999) (quoting *Toussie*, 397 U.S. at 122). The threshold question, then, is what evil did Congress seek to prevent when enacting 18 U.S.C. § 658.

In its supplemental brief, the Government suggests several possible answers to the question. For example, the brief could be construed as contending that simply moving the tractor to his father's farm constitutes criminal behavior. *See* Gov. Supp. Br. at 2. But that allegation is

not sufficient, on its own, to constitute a violation of § 658. An owner of farm equipment may store that equipment where he wishes without necessarily running afoul of a security agreement. The mere relocation of equipment pledged as collateral cannot be the evil Congress sought to prevent.

The Government further suggests that § 658 is violated from the moment the debtor is in default until the time the debtor voluntarily surrenders the collateral. *See id.* at 17 ("[The crime] will not be complete until Scott McQuarrie surrenders possession of the TW 35 tractor to FSA."). But that argument likewise goes too far. There is a distinction between mere "failure to pay a civil debt" and "fraudulent conversion of . . . collateral." *United States v. Bellman*, 741 F.2d 1116, 1118 (8th Cir. 1984). *See also United States v. Archambault*, 767 F.2d 402, 405 (8th Cir. 1985) (explaining that § 658 does not criminalize defaulting on a loan). A lender can waive its right of repossession of collateral by declining to exercise its authority to do so. Thus, a debtor's retention of pledged collateral while in default is not necessarily criminal.

At the same time, § 658 does not include as an element any requirement that the FSA be frustrated in an actual effort to repossess its collateral or obtain proceeds from the sale of its collateral. Indeed, the Eighth Circuit has expressly rejected the idea that Congress intended § 658 to replace state tort laws affecting property rights. *See United States v. Kramel*, 234 F.2d 577, 581 (8th Cir. 1956). Section 658 focuses on the intent of and actions by defendants. The elements are satisfied when a defendant "knowingly conceals, removes, disposes of, or converts to his own use or to that of another" property pledged to a farm credit agency "with intent to defraud."

Several principles can be derived from these elements. First, the requirement that the defendant have "intent to defraud" distinguishes innocent relocations of pledged collateral from criminal attempts to remove, dispose of, or conceal pledged collateral. Because the grand jury

concluded that there was probable cause to believe that Scott McQuarrie acted with intent to defraud, that element is assumed to be satisfied. *See Bicoastal Corp.*, 819 F. Supp. at 158. Second, the statute suggests that the defendant must act with the intent of benefitting himself or some other person. *See* § 658 (criminalizing conversion of property "to his own use or that of another"). That element is a corollary to the requirement of intent to defraud: if a defendant does not act to benefit himself or another, intent to defraud is likely missing. Third, the common link between concealment, removal, disposal, or conversion of pledged collateral is that the conduct makes it more difficult for the lender to receive the benefits of collateralization.

As indicated above, there is no reason to believe that such conduct is criminal only when it actually results in the farm credit agency being deprived of the collateral. The Government admits that the FSA can still seek to seize the tractor through "judicial process." Gov. Supp. Br. at 15. But that option entails costs in terms of time and resources. Thus, when a debtor intentionally complicates the seizure process for a lender (and thus benefits himself or another), the lender has suffered harm (even if the lender ultimately prevails in seizing the collateral).

The grand jury's decision to return an indictment confirms that probable cause to try Scott McQuarrie on Count Four exists. And the discussion of Congress's intentions in passing § 658 further confirm that the relevant misconduct occurred within the statute of limitations. At the point that Scott and David McQuarrie both asserted ownership of the tractor, they evidenced intent to prevent (or at least obstruct) the FSA's attempts to seize the tractor. Until that point, Scott McQuarre's relocation of the tractor could be construed as lacking intent to defraud (because equipment owners may store equipment wherever they wish and because there is no evidence FSA ever looked for the tractor or asked where it was located). When father and son both asserted ownership, however, it became manifestly clear that FSA could recover its collateral only through

judicial process (because competing claims of ownership were being asserted). By asserting ownership, Scott and David McQuarrie thus obstructed FSA's ability to receive the financial protection from the collateral it was entitled to.[1] In other words, regardless of whether Count Four could be brought based solely on the relocation of the tractor to David McQuarrie's farm, the heart of the concealment (and injury to the FSA) occurred when Scott McQuarrie and his father both asserted ownership. That obstruction occurred in March of 2015, which falls well within the five year statute of limitations. Count Four is not untimely, and so Scott McQuarrie's motion to dismiss will be denied.[2]

**IV.**

Because Scott McQuarrie's motion to dismiss will be denied, his motion for a change of venue must be addressed. On April 4, 2018, Scott McQuarrie filed a motion for a change of venue for the trial on Count Four. ECF No. 163. In the motion, McQuarrie argues that Government press releases and media reports following the first trial have so influenced the potential jury pool for the second trial that Scott McQuarrie *cannot* obtain a fair and impartial trial in the Northern Division of the Eastern District of Michigan. In support of that argument, McQuarrie cites one news article in *The Alpena News* which quotes a press release by United States Attorney Matthew

---

[1] This is the "central objective[]" of the crime charged in Count Four, which Scott McQuarrie admits is the dispositive fact in the continuing offense analysis. *See* Def. Resp. Br. at 2.

[2] The Government devotes a considerable portion of its supplemental brief to the proposition that the offense continues to this day because Scott and David McQuarrie continue to assert ownership of the tractor. Given the rationale articulated above, that question need not be reached. The Court notes, however, that this argument by the Government has astonishing breadth. At the point when David McQuarrie asserted ownership of the tractor, the "obstruction" or "inconvenience" to the FSA occurred. But Scott and David's refusal to retract that assertion does not increase the obstruction: FSA's remedy remains judicial process. The Government's argument to the contrary suggests that Defendants have an obligation to admit that they previously lied, and that the offense of concealment continues until they do so. But the natural conclusion of that argument is that every financial crime which requires proof of specific intent to defraud is a continuing offense until either the Defendant is convicted or they admit their guilt. That dynamic is entirely inconsistent with the presumption of innocence accorded to each criminal defendant, and even more inconsistent with the Supreme Court's admonition that the doctrine of continuing offenses must applied only in limited circumstances. *Toussie*, 397 U.S. at 115.

Schneider and USDA – Office of Inspector General Agent-in-Charge Anthony Mohatt. News Article, ECF No. 163, Ex. 1. The article summarizes the charges against the McQuarries and the outcome of the trial. McQuarrie's motion falls short of demonstrating extraordinary prejudice which would prevent a fair and impartial second trial.

The Sixth Amendment guarantees criminal Defendants the right to be tried by an impartial jury. *Skilling v. United States*, 561 U.S. 358, 377 (2010). Pursuant to Federal Rule of Criminal Procedure 21(a), a district court *must* transfer a proceeding "if the court is satisfied that so great a prejudice against the defendant exists in the transferring district that the defendant cannot obtain a fair and impartial trial there." The Constitution requires transfer if "extraordinary local prejudice will prevent a fair trial." *Skilling¸*561 U.S. at 378. "A change in venue can be warranted by presumptive or actual prejudice." *United States v. Poulsen*, 655 F.3d 492, 506 (6th Cir. 2011). McQuarrie does not argue that *The Alpena News* article has actually prejudiced any individual juror. Rather, he contends that prejudice should be presumed "given the government's intent to taint the future jury pool for Trial 2." Mot. Trans. Venue at 2, ECF No. 163.

"Courts rarely find that presumptive prejudice exists." *United States v. Poulsen*, 655 F.3d 492, 507 (6th Cir. 2011). Indeed, the Sixth Circuit has "characterized presumptive prejudice as a 'circus-like atmosphere' that 'pervades both the courthouse and surrounding community.'" *Id.* (quoting *Foley v. Parker*, 488 F.3d 377, 387 (6th Cir. 2007)). "Simple exposure of jurors to pretrial publicity 'does not presumptively establish that the defendant was denied a fair trial.'" *Id.* (quoting *United States v. Jamieson*, 427 F.3d 394, 412 (6th Cir. 2005)).

A single online news article falls far short of justifying a presumption of prejudice. Juries in the Northern Division are drawn from a 10,000 person jury pool which is, in turn, developed from a group of 21 counties (and thus hundreds of thousands of residents). Eastern District of

Michigan Admin. Order, 13-AO-016. There is simply no reason to believe that a single news article by a local paper within one of those counties will irrevocably infect the entire jury pool. During voir dire, attorneys frequently ask potential juries to list the news organizations from which they get their news. If a substantial portion of the jury pool at the second trial indicate that they regularly read *The Alpena News*, an inquiry into actual prejudice may become appropriate. But given the extremely limited scope of the media coverage identified by McQuarrie, it is almost certain that any potentially biased jurors can be excused for cause without impeding the efficient administration of the trial or infringing McQuarrie's constitutional right to an impartial jury. The motion for a change of venue will be denied.

**V.**

Accordingly, it is **ORDERED** that Defendant Scott McQuarrie's motion to dismiss Count Four, ECF No. 130, is **DENIED.**

It is further **ORDERED** that Defendant Scott McQuarrie's motion to transfer, ECF No. 163, is **DENIED.**

Dated: May 7, 2018
s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on May 7, 2018.

s/Kelly Winslow
KELLY WINSLOW, Case Manager