UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,                Case No. 16-cr-20499-01

v.                                      Honorable Thomas L. Ludington

SCOTT DAVID MCQUARRIE,

        Defendant.
_____/

**OPINION AND ORDER REGARDING SENTENCING ENHANCEMENT AND SUPPLEMENTAL BRIEFING AND SCHEDULING TELEPHONIC STATUS CONFERENCE**

On March 29, 2018, a jury convicted Defendant Scott David McQuarrie of twelve of thirteen counts related to false statements and conversion of collateral pledged for a loan from the Farm Service Agency. ECF No. 148. On September 27, 2018, Defendant was sentenced to concurrent terms of 70 months for three of the counts, 60 months for nine of the counts, and 15 months for one count. ECF No. 252. Later that same day, Defendant filed his notice of appeal. ECF No. 249.

The Sixth Circuit affirmed the sentence except for this Court's application of the U.S.S.G. § 3C1.1 obstruction-of-justice enhancement based on Defendant's interruption of voir dire well into jury selection. ECF No. 288 at PageID.27–32. The Sixth Circuit remanded the case for resentencing. *Id.* at PageID.4733. At a subsequent status conference on July 21, 2020, the parties were directed to file supplemental briefs explaining (1) whether the Sixth Circuit had ordered further findings of fact on the existing record, (2) whether additional evidence not on the existing record should be considered, (3) whether Defendant's post-conviction institutional conduct should

be considered, such as by supplemental Presentence Investigation Report, and (4) whether Defendant consents to resentencing by videoconference hearing. ECF No. 294.

The parties have since filed briefs addressing the questions above. ECF Nos. 296, 297. For the reasons stated below, the enhancement is well-supported by the existing record. Furthermore, the parties should prepare to present or respond to evidence of Defendant's post-conviction institutional conduct at the resentencing hearing, which, with Defendant's consent, will be held by videoconference.

### I.

In reversing the enhancement, the Sixth Circuit held (1) that the Circuit had not decided that a § 3C1.1 enhancement could be applied to a defendant who obstructs his own trial; and (2) that, even if such an enhancement could be applied, this Court had not shown that "[Defendant's] conduct was intentionally designed to thwart jury selection." ECF No. 288 at PageID.4728–33. The Sixth Circuit summarized,

> Given the plausible explanation for McQuarrie's conduct—the letter sent on the eve of trial making him question whether he was receiving and would receive effective assistance of counsel—,the absence of any past episodes of McQuarrie's attempts to obstruct court proceedings, the guidelines' explanation that the obstruction-of-justice enhancement is not intended to punish a defendant for the exercise of a constitutional right, and the absence of any explanation for the district court's conclusion, we conclude that application of the enhancement was erroneous.

*Id.* at PageID.4732–33 (internal citations and quotation marks omitted).

### II.

#### A.

The Sixth Circuit, as noted above, has not decided whether an obstruction-of-justice enhancement can be applied to a defendant that willfully attempts to disrupt his own trial. ECF No. 288 at PageID.4730. While the Sixth Circuit did not decide the question during Defendant's

appeal, it did survey the law and noted the fact that other circuits have applied such an enhancement where a defendant's in-court conduct is clearly intended to disrupt the proceedings. *See United States v. Addison*, 683 F. App'x 921, 923 (11th Cir. 2017) (holding that enhancement was proper where defendant sent threatening letter to prosecutor); ECF No. 288 at PageID.4730 (citing *Addison* among other authority). No exception is taken to the Sixth Circuit's suggestion that if the obstruction-of-justice enhancement is to be applied, the evidence must establish the misconduct was intentional by a preponderance of the evidence. This Court remains of the view that the obstruction-of-justice enhancement is appropriate where the defendant has clearly attempted to disrupt and delay his own trial and that of his co-defendants, in this case, his parents.

**B.**

The Sixth Circuit held that this Court failed to support its conclusion that "[Defendant's] conduct was intentionally designed to thwart jury selection." ECF No. 288 at PageID.4730. Consistent with the Sixth Circuit's opinion, further findings are made below.

**1.**

Defendant's outburst was not an isolated incident. When Defendant abruptly rose to his feet well into the process of jury selection, months of willfully disruptive conduct preceded it. That is, not only was he unwilling to accept any responsibility for his behavior, he was also clearly of the view that his obstruction of the proceeding would ultimately lead to dismissal or abandonment of the charges.

Defendant was initially indicted as the sole defendant on July 13, 2016, and on July 19, 2016, Federal Community Defender Elias Escobedo filed an appearance on his behalf.[1] ECF Nos. 1, 2. On March 13, 2017, Mr. Escobedo informed the Court during the final pretrial conference

---

[1] Defendant's underlying criminal conduct is recounted at length in the Sixth Circuit's opinion. *See* ECF No. 288 at PageID.4702–06.

that Defendant was not cooperating in his own defense and was frustrating Mr. Escobedo's "attempts to investigate the interrelationship of the criminal prosecution and the bankruptcy proceeding." ECF No. 16 at PageID.56. Because Mr. Escobedo was having difficulty obtaining information from his client, the Court convened a conference with Mr. Escobedo, the McQuarries' bankruptcy counsel, and the AUSAs assigned to the case to facilitate communication. The Court also took the very unusual procedure of ordering Defendant to cooperate with Mr. Escobedo and reminding him that doing so was in his best interest. *Id.* The Court was also informed that numerous efforts were made to resolve the case such that his parents would not be implicated, but to no avail. On June 7, 2017, a superseding indictment was returned, charging Defendant's parents David Allen McQuarrie and Yvonne Evelyn McQuarrie with aiding and abetting their son's fraud.

On September 14, 2017, the Government moved to revoke Defendant's bond. ECF No. 39. Defendant had been unlawfully residing at the property foreclosed on by the Farm Services Agency. *Id.* Defendant had known since at least March 2017 that his residence was unlawful and had even rejected a proposed stipulation from the Government that would have allowed him to voluntarily quit the premises. *Id.* Defendant's presence at the property was not only trespassory but an impediment to the bankruptcy proceedings. *Id.* On September 29, 2017, Defendant's terms of bond were modified to prohibit him from entering the property. ECF No. 40.

On January 19, 2018, less than three weeks before the start of trial, Defendant, through his counsel, moved for the appointment of a second attorney. ECF No. 81. Mr. Escobedo argued that, based on the amount of evidence, and the lack of assistance from Defendant, the case was "extremely difficult" and too much for one attorney. *Id.* at PageID.395. At no point was it alleged that Mr. Escobedo was unwilling to represent Defendant at trial or that Defendant had concerns with Mr. Escobedo's strategy. Defendant's contention regarding the complexity of the case was

belied by the fact that Mr. Escobedo had been appointed since July 19, 2016 and had 17 months to prepare. ECF No. 88. His motion was denied. *Id.*

On February 6, 2018, shortly after 10:00 A.M., Magistrate Judge Patricia Morris began jury selection. ECF No. 276. This Court was observing the proceeding by closed circuit television from chambers. An hour into the process—after introductions by the Court, attorneys, and 28 potential jurors—Defendant suddenly rose to his feet:

| | |
|---|---|
| **Defendant** | Your Honor, I'd like to request another attorney, please |
| **Court**: | Oh, Mr. McQuarrie, we will discuss that at sidebar, please. |
| **Defendant**: | I—yeah, I'm not going to get tried fairly with the defense I have now— |
| **Court**: | I think maybe— |
| **Defendant**: | —and also the— |
| **Court**: | Sir, it would be best if we talk about this in private, so if you don't mind, if you would have a seat, and we will—perhaps this might be a good time to take a recess and let everybody stretch their legs and use the restroom. |

ECF No. 276 at PageID.4632. When the proceeding resumed, Defendant professed his anger over a letter Mr. Escobedo had sent him the night before. *Id.* at PageID.4634. The letter, according to Defendant, suggested that Mr. Escobedo was unwilling or unable to defend Defendant at trial. *Id.* Mr. Escobedo responded that "until [Defendant] actually stood up, he never explained any concerns [to him]." *Id.* at PageID.4643. In fact, the letter from Mr. Escobedo merely "summarized and memorialized" what had transpired in the case, "reiterated the original plea offer," and reminded Defendant that, "as a result of [the] case going forward," he had "subjected himself [] to a substantial sentence along with his parents." *Id.* Magistrate Judge Morris agreed that the letter

was good advice and denied Defendant's motion for substitution of counsel.[2] *Id.* at PageID.4644–45.

Mr. Escobedo then moved for a mistrial, arguing that Defendant had "poisoned [the] jury."[3] *Id.* at PageID.4645. Initially, Magistrate Judge Morris disagreed, stating that she "tried to pretend like the outburst was not unusual" and "to diffuse the situation." *Id.* at PageID.4646. But then counsel for Defendant's parents' attorneys weighed in, and they were adamant: Defendant's behavior had so "infected" the process—jeopardizing his parents' right to a fair trial—that a curative instruction would only make matters worse. *Id.* at PageID.4649–52. Over the Government's objection, Magistrate Judge Morris dismissed the jury venire. *Id.* at PageID.4655–58.

At a later hearing on February 15, 2018, Mr. Escobedo reiterated that Defendant had not previously raised concerns about Mr. Escobedo's representation:

> Your honor, there was no expression of concern regarding my representation, at least in the last year, year and a half . . . I know that Mr. McQuarrie and I have had some serious discussions with respect to various aspects of the case . . . I discussed at length with Mr. McQuarrie plea offers that been proposed by the Government, both early on and midstream in terms of this case. Unfortunately, Mr. McQuarrie has gotten angry with me because I brought those matters to his attention, and I think he interprets that discussion, or those discussions, as somehow being my inability to represent him or not wanting to represent him . . . .

ECF No. 126 at PageID.551–52.

**2.**

Defendant's outburst could not be explained as a misguided assertion of his constitutional rights. It was a willful attempt to derail a proceeding that he wanted no part of. Defendant's persistent attempts to frustrate and delay the case, as well as the timing and manner of his outburst,

---

[2] Nevertheless, another attorney appeared on Defendant's behalf at trial, Joseph A. Niskar. Mr. Niskar's services were procured with funds from Defendant's sister, significantly depleting her personal savings. ECF No. 128.
[3] Mr. Escobedo later described Defendant's outburst as "outrageous." ECF No. 100 at PageID.448.

support only that conclusion. Based on the foregoing, the Court concludes that the evidence establishes Defendant's willful effort to obstruct his trial and that of his parents. The enhancement under § 3C1.1 is appropriate. As noted at sentencing, Defendant's behavior brought tragedy to his family, that is, a very unnecessary tragedy. *See* ECF No. 256 at PageID.1957 (sentencing transcript).

### III.

#### A.

The parties agree that Defendant's post-conviction institutional conduct should be considered at resentencing even if there is no change in the applicable sentencing guidelines. ECF Nos. 296, 297. To that end, a supplemental Presentence Investigation Report will be ordered. Defense counsel also notes that Defendant recently underwent surgery to remove a "brain tumor the size of a grapefruit" and that the tumor may have affected his charged conduct or his conduct leading up to trial. ECF No. 297 at PageID.4761. Defense counsel expects to present evidence of this procedure at resentencing. *Id.*

#### B.

Defendant, as earlier noted, has consented to resentencing by videoconference hearing. ECF No. 297. Accordingly, the hearing will take place by Zoom videoconference.[4]

### IV.

Accordingly, it is **ORDERED** that an enhancement under U.S.S.G. § 3C1.1 will be applied to Defendant's sentence for willfully obstructing voir dire on February 6, 2018.

It is further **ORDERED** that the parties are **DIRECTED** to prepare for the resentencing consistent with this opinion.

---

[4] Consistent with an administrative order of this district, 20-AO-027, sentencing is being conducted by Zoom videoconference because of the COVID-19 pandemic.

- 8 -

It is further **ORDERED** that the parties are to appear for a telephonic status conference on **October 14, 2020 at 11:30 am** to discuss witnesses and length of time needed for resentencing hearing. Counsel will receive a separate email containing the call-in number.

Dated: September 18, 2020                     s/Thomas L. Ludington
                                              THOMAS L. LUDINGTON
                                              United States District Judge