UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

UNITED STATES OF AMERICA,

                Plaintiff,                Case No. 16-20499-1

v.                                                 Honorable Thomas L. Ludington

SCOTT DAVID MCQUARRIE,

                Defendant.

_____/

**ORDER DENYING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE**

This matter is before the Court pursuant to Defendant Scott David McQuarrie's Motion for Compassionate Release. ECF No. 299. Defendant is currently housed at Federal Correctional Institute, McKean ("FCI McKean") in Pennsylvania. He seeks compassionate release under 18 U.S.C. § 3582(c)(1)(A) based on his neurological deficits and his susceptibility to the novel coronavirus ("COVID-19"). Plaintiff, the United States of America (the "Government") opposes Defendant's Motion. ECF No. 311. For the reasons set forth below, Defendant's Motion for Compassionate Release will be denied.

**I.**

On March 29, 2018, a jury convicted Defendant of twelve of thirteen counts related to false statements and conversion of collateral pledged for a loan from the Farm Service Agency. ECF No. 148. On September 27, 2018, Defendant was sentenced to concurrent terms of 70 months for three of the counts, 60 months for nine of the counts, and 15 months for one count. ECF No. 252. Later that same day, Defendant filed his notice of appeal. ECF No. 249.

The Sixth Circuit affirmed the sentence except for this Court's application of the U.S.S.G. § 3C1.1 obstruction-of-justice enhancement based on Defendant's interruption of voir dire well

into jury selection. ECF No. 288 at PageID.4727–32. The Sixth Circuit remanded the case for resentencing. *Id.* at PageID.4733.

On September 18, 2020, this Court issued an opinion and order (1) making particularized findings regarding Defendant's conduct before and during voir dire, (2) holding that such findings warranted the § 3C1.1 enhancement, and (3) directing the parties to appear for resentencing, which, pursuant to the supplemental briefs, would be conducted by videoconference and would include evidence of Defendant's post-conviction conduct. ECF No. 298. With respect to post-conviction conduct, the Opinion and Order also noted Defendant's intent to introduce evidence that he "recently underwent surgery to remove a 'brain tumor the size of a grapefruit' and that the tumor may have affected his charged conduct or his conduct leading up to trial." *Id.* at PageID.4769.

On November 11, 2020, Defendant filed the pending Motion for Compassionate Release. ECF No. 299. He also filed a supplemental brief on January 8, 2021, explaining that this Court was no longer required to apply U.S.S.G. § 1B1.13 when deciding the Motion. ECF No. 308. The Government responded on January 28, 2021, arguing that Defendant did not satisfy the statutory requirements for compassionate release. ECF No. 311.

The resentencing hearing was finally conducted on February 19, 2021 by way of Zoom videoconference. Defendant called his neurosurgeon, Dr. Brian Dalton, as a witness. Dr. Dalton testified that Defendant had been admitted to Bradford Regional Medical Center in June 2020 because of certain neurological symptoms, including memory and ambulatory difficulties. MRI scans revealed a massive intracranial tumor in the left frontal area of the brain about 6.5cm in diameter—roughly the size of a softball. Dr. Dalton thus performed a craniotomy and removed the tumor.

Dr. Dalton could not say with certainty when the tumor began to grow but stated that it could have been growing for as long as a decade. He explained that the tumor was likely to have caused some neurological symptoms, like changes in personality and behavior, long before Defendant was admitted to the hospital in June 2020. Dr. Dalton acknowledged, however, that his testimony was limited because he could not know the development of Defendant's tumor with certainty.

Dr. Dalton testified that Defendant may achieve a full cognitive recovery but that some residual symptoms may persist. He stated that Defendant would benefit from seeing a neuropsychologist for rehabilitation. Dr. Dalton claimed that Defendant did not see a neuropsychologist after surgery because he was returned to federal custody and Dr. Dalton was unsure how to order the treatment at FCI McKean.

Defendant's fiancé, Stacey Horton, also testified on Defendant's behalf. She stated that she had seen a positive change in Defendant since his surgery, and that he seemed "calmer." She also claimed that Defendant had expressed remorse for his past behavior.

After considering the aforementioned testimony, the arguments of counsel, and Defendant's allocution, this Court reduced Defendant's sentence to 60 months for each count and to be served concurrently. Defendant was thereafter informed of his right to file an appeal, and neither Defendant nor the Government lodged objections on the record.

With resentencing complete, Defendant's Motion for Compassionate Release is now ripe for resolution.

## II.

The United States is facing an unprecedented challenge with the COVID-19 pandemic.

> The COVID-19 virus is highly infectious and can be transmitted easily from person to person. COVID-19 fatality rates increase with age and underlying health

> conditions such as cardiovascular disease, respiratory disease, diabetes, and immune compromise. If contracted, COVID-19 can cause severe complications or death.

*Wilson v. Williams*, 961 F.3d 829, 833 (6th Cir. 2020). In light of the threat posed by COVID-19, Defendant seeks a reduction of his sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)—a form of relief often referred to as "compassionate release." Section 3582(c)(1)(A) provides,

> The court may not modify a term of imprisonment once it has been imposed except . . . upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission

18 U.S.C. § 3582(c)(1)(A). Accordingly, the threshold question is exhaustion. If exhaustion is found, courts must then follow the statute's three-step test:

> At step one, a court must "find[ ]" whether "extraordinary and compelling reasons warrant" a sentence reduction. At step two, a court must "find[ ]" whether "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." The Commission's policy statement on compassionate release resides in U.S.S.G. § 1B1.13. Thus, if § 1B1.13 is still "applicable," courts must "follow the Commission's instructions in [§ 1B1.13] to determine the prisoner's eligibility for a sentence modification and the extent of the reduction authorized." At step three, "§ 3582(c)[(1)(A)] instructs a court to consider any applicable § 3553(a) factors and determine whether, in its discretion, the reduction authorized by [steps one and two] is warranted in whole or in part under the particular circumstances of the case."

*United States v. Jones*, 980 F.3d 1098, 1107–08 (6th Cir. 2020) (internal citations omitted). "In cases where incarcerated persons [as opposed to the Bureau of Prisons] file motions for compassionate release, federal judges may skip step two of the § 3582(c)(1)(A) inquiry and have full discretion to define 'extraordinary and compelling' without consulting the policy statement § 1B1.13." *Id.* at 1111.

A.

As explained in the statute, before a court may consider an inmate's request for a reduced sentence under 18 U.S.C. § 3582, the inmate must first exhaust his administrative remedies with the Bureau of Prisons ("BOP") or wait 30 days after making such a request. The Sixth Circuit has explained that:

> By creating a compassionate-release option in the First Step Act, Congress gave inmates an option to seek early release on health grounds. The seriousness of COVID-19 and its spread in many prisons make it all the more imperative that the prisons have authority to process these applications fairly and with due regard for the seriousness of each inmate's risk. Free-floating exceptions to the rule, available to anyone willing to go to federal court first, will not help that cause.

*United States v. Alam*, 2020 WL 2845694, at *4 (6th Cir. June 2, 2020). Defendant alleges that he sent a written request for compassionate release to the BOP prior to filing the pending Motion for Compassionate Release. ECF No. 299 at PageID.4781. The Government confirms that Defendant requested compassionate release on June 15, 2020 and that his request was subsequently denied by the BOP. ECF No. 311 at PageID.4892. Accordingly, Defendant has exhausted his administrative remedies with the BOP.

B.

The next issue is whether sentence reduction is warranted by "extraordinary and compelling reasons." Because Defendant moves for compassionate release on his own behalf, § 1B1.13 is "inapplicable," and [u]ntil the Sentencing Commission updates § 1B1.13 to reflect the First Step Act, district courts have full discretion in the interim to determine whether an 'extraordinary and compelling' reason justifies compassionate release." *Jones*, 980 F.3d at 1109. Accordingly, courts of this circuit are no longer confined to the considerations outlined in the policy commentary when determining if a defendant's request is extraordinary and compelling,

such as whether an inmate suffers from a "terminal illness" or "serious physical or medical condition." U.S.S.G. § 1B1.13 cmt. n.1.

Despite the lack of express guidance, *Jones* suggests that an inmate may have an extraordinary and compelling reason for release where he suffers from a medical condition identified as a risk factor for COVID-19. *See Jones*, 980 F.3d at 1102, n.6 (6th Cir. 2020) (holding that inmate's prior exposure to tuberculosis "could be considered an extraordinary and compelling reason for compassionate release" because it "put him at risk of contracting the virus" or "serious long-term health problems" if he had already contracted it). Courts considering the issue post-*Jones* have agreed. *See*, *e.g.*, *United States v. Rucker*, No. 17-20716, 2020 WL 7240900, at *2 (E.D. Mich. Dec. 9, 2020) (HIV and asthma) (citing *Jones*, 980 F.3d at 1102 n.6); *United States v. White*, No. 18-20183, 2020 WL 7240904, at *3 (E.D. Mich. Dec. 9, 2020) (BMI of 45.9) (citing *Jones*, 980 F.3d at 1102 n.6); *United States v. Crowe*, No. CR 11-20481, 2020 WL 7185648, at *3 (E.D. Mich. Dec. 7, 2020) (latent tuberculosis, hyperlipidemia, obesity).

More recently, the Sixth Circuit affirmed the denial of compassionate release based on a two-part test for extraordinary and compelling reasons. *See Elias*, 984 F.3d at 520. Under the two-part test in *Elias*, the risk of contracting COVID-19 constitutes an extraordinary and compelling reason "(1) when the defendant is at high risk of having complications from COVID-19 and (2) the prison where the defendant is held has a severe COVID-19 outbreak."[1] *Id.* (quoting *United States v. Hardin*, No. 19-CR-240, 2020 WL 2610736, at *4 (N.D. Ohio May 22, 2020)). The Sixth Circuit also held that the district court, in evaluating the movant's medical conditions, "properly considered the CDC guidance that was in effect at the time," given that "[r]elying on official

---

[1] Consistent with *Jones*, the court emphasized that district courts need not apply this definition but that it is within their discretion to do so. *Elias*, 984 F.3d at 521 n.1.

guidelines from the CDC is a common practice in assessing compassionate-release motions." *Id.* at 521.

Defendant offers two reasons for release that he claims are "extraordinary and compelling" for purposes of 18 U.S.C. § 3582(c)(1)(A).

### 1.

Defendant first argues that his ongoing neurological deficits, including "speech, memory, and motor skills issues," constitute "serious functional or cognitive impairments" that "substantially diminish[] his ability to care for himself," as contemplated in the policy statement commentary that previously governed the inquiry. ECF No. 299 at PageID.4782–86 (quoting U.S.S.G. § 1B1.13 cmt. 1(A)(ii)(II)).

At resentencing, Dr. Dalton testified that Defendant would benefit from seeing a neuropsychologist and that he would be willing to order such treatment while Defendant is in federal custody. The Government represented that FCI McKean is willing to accommodate Defendant's treatment and simply requires Dr. Dalton's direction to do so.

Consequently, Defendant's ongoing neurological deficits do not seem "extraordinary and compelling" within the meaning of § 3582(c)(1)(A). The only reason that Defendant has not yet received neuropsychological treatment is because Dr. Dalton and prison officials have not successfully communicated regarding his treatment. Based on the representations at resentencing, there is no reason that these difficulties should persist. Furthermore, Defendant identifies no case, controlling or otherwise, where a defendant was granted compassionate release for neurological treatment that could be rendered in federal custody. Therefore, Defendant's neurological deficits do not justify compassionate release.

**2.**

Defendant next argues that he is at an increased risk of severe illness from COVID-19. ECF No. 299 at PageID.4786–87. First, Defendant states that he was on a sustained course of steroid treatment after his surgery that weakened his immune system. *Id.* at PageID.4787. The CDC states that the "prolonged use of corticosteroids . . . might increase [the] risk of severe illness from COVID-19." *See People with Certain Medical Conditions*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html [https://perma.cc/FUM6-Y75Z] (last visited Mar. 2, 2021). Second, Defendant notes that with a BMI of 27.9, he is "borderline obes[e]"—a recognized risk factor for COVID-19. ECF No. 299 at PageID.4789; CDC, *supra*. Finally, Defendant claims that he is at heightened risk because he is 44. ECF No. 299 at PageID.4790. While the 40- to 49-year-old age bracket is less at-risk than other brackets, the CDC confirms that "the risk for severe illness with COVID-19 increases with age." *See Older Adults*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html [https://perma.cc/EP4M-BSGG] (last visited Mar. 2, 2021).

Despite these underlying risk factors, Defendant has not demonstrated an extraordinary and compelling reason for release. At resentencing, the parties confirmed that Defendant discontinued his corticosteroid treatment in August 2020. The Government also indicated that Defendant had recently received his first dose of a COVID-19 vaccine. According to the CDC, "[a]ll COVID-19 vaccine currently available in the United States have been shown to be highly effective at preventing COVID-19." *See Benefits of Getting Vaccinated*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/vaccine-benefits.html [https://perma.cc/HF8W-L5AF] (last visited Mar. 2, 2021).

Furthermore, while FCI McKean previously experienced a severe COVID-19 outbreak—with some 454 inmates testing positive for the disease—the facility is currently reporting only three active infections among inmates. *See COVID-19*, BOP, https://www.bop.gov/coronavirus/ [https://perma.cc/44BK-X773] (last visited Mar. 5, 2021).

Accordingly, absent some authority to the contrary, this Court will not deem an underlying susceptibility to COVID-19 "extraordinary and compelling" where the movant is vaccinated against the disease and is not housed in a facility with a substantial outbreak. *Cf. Elias*, 984 F.3d at 520–21 (holding that district court did not abuse its discretion where it applied two-part test considering whether "defendant is at high risk of having complications from COVID-19" and whether "the prison where the defendant is held has a severe COVID-19 outbreak").

Because Defendant has not demonstrated an extraordinary and compelling reason for release, this Court declines to consider whether the § 3553 factors would warrant a reduction of his sentence to time-served.[2] *See id.*, 984 F.3d at 519.

### III.

Accordingly, it is **ORDERED** that Defendant's Motion for Compassionate Release, ECF No. 299, is **DENIED WITH PREJUDICE**.

Dated: March 5, 2021                    s/Thomas L. Ludington
                                        THOMAS L. LUDINGTON
                                        United States District Judge

---

[2] These factors were considered on the record as part of Defendant's recent resentencing.